## WILLIAM MORSE *vs.* CALVIN MARSHALL.

In a conveyance of a water privilege, the grant of "all the land that the dam flows" may reasonably be construed to include all the land that the dam flows when actually used for the purpose for which it was erected and conveyed, although at the time of the conveyance the dam was out of repair and flowed a smaller extent of land.

A deed of a water privilege, having a lower and an upper dam, "also all the land which I, the said grantor, own that said first mentioned dam flows, (reserving all the wood except what stands on said dam,) together with the right to flow all the land that said dam as it now stands will flow; also all the land which the second mentioned dam flows, (reserving the wood,) together with the right to flow all the land that said dam as it now stands will flow," conveys the land which the upper dam would flow if in use, although at the date of the deed the dam was not in use and out of repair, and flowed a much smaller extent of land than it would have flowed if in use and in repair, and although some trees were then growing upon the land which was then actually flowed.

TORT in the nature of trespass *quare clausum fregit.* At the second trial in the superior court, before *Vose, J.,* after the decision reported in 11 Allen, 229, the jury returned a verdict for the defendant, under instructions authorizing them to do so; and the plaintiff alleged exceptions. The case is stated in the opinion.

*E. Ames,* for the plaintiff.

*E. H. Bennett,* for the defendant.

GRAY, J. The deed made by Calvin Marshall in 1833, under which the plaintiff derives his title, conveyed a water privilege in Easton, having two dams, one about eight rods below the other: "Also all the land which I, the said Calvin Marshall, own that said first mentioned dam flows, (reserving all the wood except what stands on said dam,) together with the right to flow all the land that said dam as it now stands will flow: Also all the land which the second mentioned dam flows, (reserving the wood,) together with the right to flow all the land that said dam as it now stands will flow." When this case was before us last

year, it was held that, upon the facts appearing at the first trial, this deed conveyed all the land which the second or upper dam flowed when in use, and not merely that portion of the land which was actually covered by water at the moment when the deed was made. The facts proved by the defendant at the second trial remove or weaken some of the considerations upon which that result was reached, but are not sufficient to satisfy us that the construction then given was erroneous.

The material facts proved at the second trial were these: Both the dams had existed and been used long before the making of the deed of 1833. While they were in full use, the first or lower dam flowed about an acre and a half of land, all belonging to the grantor; and the second or upper dam flowed about nine and a half acres, part of which only was owned by him. At the time of the execution of the deed, both dams were in a dilapidated condition, the flumes and water-ways were open, only about a third of an acre was actually flowed by each dam, and no evidence was introduced to show the bounds of the portions thus flowed, or whether it was possible to prove such bounds, or whether the extent of such flowing was constantly varying while the dams were not in use. At the date of the deed, clusters of trees were scattered all over the grantor's land which would be flowed by the upper dam when in use; and there were some trees growing on the third of an acre then actually flowed by that dam. This action is brought to recover damages for trespassing and cutting wood on the remaining land which was not covered with water at the date of the deed.

The strength of the argument for the defendant is that the fact, as now appearing, that there was some wood on the one third of an acre actually flowed by the upper dam at the time of the execution of the deed, satisfies the reservation of wood in that clause of the grant which relates to this dam; and that if the grant of " all the land which the second mentioned dam flows " conveyed all the land which this dam could flow, the added words " together with the right to flow all the land that said dam as it now stands will flow " would be superfluous and unmeaning.

But by recurring to the preceding clause, relating to the other dam, we find a reason for the insertion of these words, which was not alluded to in the opinion heretofore given. The deed contains the usual covenants of warranty. In the first clause, the land granted is in terms restricted to "the land which I, the said Calvin Marshall, own that said first mentioned dam flows;" while the right of flowing granted includes "all the land that said dam as it now stands will flow," whether owned by the grantor or not. The restriction, expressed in the first grant of land, to land owned by the grantor, must certainly, interpreting the two clauses in the light of each other and of the surrounding facts, be implied in the grant of "land which the second mentioned dam flows," inasmuch as part of the land flowed by this dam was not owned by the grantor; and the second grant of land being thus restricted, a reason is shown for the repetition, in this clause, of the words "together with the right to flow all the land that said dam as it now stands will flow." In either clause, the grant of land is restricted to land owned by the grantor, but the grant of the right of flowing may extend to land which he does not own, as well as to incidental injuries occasioned by the flowing to adjoining land of the grantor not included in the grant. The grant of land would not of itself authorize the grantee to cover it with water to the injury of other lands retained by the grantor. *Fletcher* v. *Rylands*, Law Rep. 1 Exch. 265. *Pixley* v. *Clark*, 35 N. Y. 520.

In the conveyance of a water privilege, a grant of "the land which" a certain "dam flows" may reasonably be held to mean the land which the dam flows when actually used for the purpose for which it was erected and conveyed, and the extent of which is capable of being readily determined at any time; rather than the small portion of land which happens to be flowed at the moment of the conveyance, when the dam is out of repair and the flumes and water-ways open, depending as much upon the condition of the stream as upon that of the dam, and the bounds of which can with difficulty be ascertained at any subsequent time. The additional words, defining the right of flowing, seem to us not to be inconsistent with this, for the reasons already

stated. Allowing them the utmost possible weight in favor of the defendant, there would still remain an ambiguity of expression, which, failing all other rules of construction, should be construed most strongly against the grantor. *Ashley* v. *Pease*, 18 Pick. 275. *Saltonstall* v. *Long Wharf*, 7 Cush. 201.

*Exceptions sustained.*